Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff*
and those similarly situated

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALEJANDRO VALLESILLO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VANGUARD EQUITIES, LLC, a New York Limited Liability Company, and JEROME CERILLO, an individual,<br><br>Defendants. | Case No.: [Case No.]<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

1. Plaintiff ALEJANDRO VALLESILLO ("Plaintiff") brings this Complaint and Demand for Jury Trial against Defendant VANGUARD EQUITIES LLC ("Vanguard", or "Defendant") and Defendant JEROME CERILLO ("Cerillo", or "Defendant" or together, "Defendants") to stop their illegal practice of sending unsolicited telemarketing text messages to the cellular telephones of consumers whose phone numbers were registered on the Federal Do Not Call ("DNC") Registry, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

2. Defendants offer fast cash loans. As a part of their marketing, Defendants sent thousands of text messages to consumers whose phone numbers are registered on the Federal DNC Registry.

3. Defendants did not obtain express written consent prior to sending these texts, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

5. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

6. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

7. By sending texts to people who have registered their phone numbers on the DNC registry, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

8. Plaintiff therefore seeks an injunction requiring Defendants to stop their illegal texting, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

9. Plaintiff ALEJANDRO VALLESILLO is a natural person and is a citizen of Omaha, Nebraska.

10. Defendant Vanguard Equities LLC is a New York Limited Liability Company.

11. Defendant JEROME CERILLO is an individual residing in New York.

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has specific personal jurisdiction over Defendants because Defendants caused the violating texts that were sent to Plaintiff in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury substantially occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15. Defendants offer fast cash loans.

16. Defendant Cerillo sent unsolicited text messages advertising Vanguard's fast cash loans.

17. Defendants failed to obtain consent from Plaintiff and the Class or check the DNC Registry before sending these unsolicited texts.

## FACTS SPECIFIC TO PLAINTIFF

### Plaintiff's Phone is his Personal Cell Phone and He has Another Phone Number for Business

18. Plaintiff's phone number ending in 8312 is Plaintiff's residential phone number.

19. Plaintiff's phone number ending in 8312 is connected to his personal cell phone.

20. Plaintiff maintains no other personal phone numbers.

21. Plaintiff uses his phone number ending in 8312 to communicate for personal reasons with his friends and family.

22. Plaintiff's cell phone is not connected to a business phone number. Plaintiff maintains a separate phone number for business purposes so that his customers do not call his personal cell phone for business purposes.

23. Plaintiff's phone number ending in 8312 has been registered on the Federal DNC Registry since December 21, 2021.

### Defendants Sent Illegal Texts to Plaintiff

24. Starting on October 2, 2024, Plaintiff received unsolicited text messages to his personal cell phone. The first one stated "Hi its Joe from VE / Following up on our up to 500k offer for NE businesses…"

25. A subsequent text repeated the same advertisement.

26. After the texts, Plaintiff received an email from Jerome Cerillo soliciting Plaintiff to fill out a loan application with Vanguard Equities LLC.

27. Plaintiff never consented to receive text messages from Defendants. Plaintiff never heard of Defendants and had no relationship whatsoever with Defendants prior to this interaction.

28. Defendants' texts violated Plaintiff's statutory rights and caused actual and statutory damages.

29. In addition to causing statutory damages, the illegal texts caused annoyance, intrusion on privacy and seclusion, and wasted cell phone battery life and time to Plaintiff.

### CLASS ALLEGATIONS

30. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class.** All persons in the United States who: (1) from the last 4 years to present (2) Defendants texted more than once in a 12-month period (3) whose telephone numbers were registered on the Federal DNC Registry for more than 30 days at the time.

31. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

32. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants sent texts to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

33. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text messages.

34. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

35. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the texts were sent by Defendants;

   b. Whether Defendants checked the DNC registry;

   c. Whether the texts promoted Defendants' services;

   d. Whether Defendants obtained written express consent prior to sending texts;

   e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

37. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief

from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this First Amended Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227(c)**
**DNC Provision**
**(On behalf of Plaintiff and the DNC Class)**

38. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

39. The telephone numbers of Plaintiff and the Class are registered on the Federal DNC Registry.

40. Defendants sent unsolicited texts Plaintiff's and the Class members' telephones without having their prior express written consent to do so.

41. Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by making soliciting telephone numbers listed on the DNC Registry. 47 C.F.R. § 64.1200(c)(2).

42. Defendants' texts were sent for the commercial purpose of selling their commercial services.

43. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

44. Plaintiff also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal DNC Registry.

## SECOND CAUSE OF ACTION
### Violation of § 64.1200(d)(1)
### Failure to Maintain Written Telemarketing Policy
### (On behalf of Plaintiff and the TCPA and DNC Classes)

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46. 47 CFR 64.1200(d)(1) requires that Defendants maintain a written telemarketing policy.

47. On October 2, 2024, Plaintiff's attorney mailed to each Defendant notifying Defendants of the violation and requesting a copy of Defendants' telemarketing policy by U.S. Postal Mail. As of the date of this filing, Plaintiff has not received any communications from Defendants.

48. Accordingly, Defendants solicited Plaintiff and the class without maintaining a written telemarketing policy, resulting in violations against Plaintiff.

49. Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

50. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

51. Plaintiff also seeks a permanent injunction requiring Defendants to maintain a written telemarketing policy.

//

//

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ALEJANDRO VALLESILLO, individually, and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate 47 CFR § 64.1200(d)(1);

D. An order declaring that Defendants' actions, as set out above, violate the TCPA, willfully and knowingly;

E. An injunction requiring Defendants to cease all unlawful texts without first obtaining the recipients' express consent to receive such texts, to maintain a written Do Not Call policy, and otherwise protecting interests of the Class;

F. An award of actual damages and/or statutory fines and penalties;

G. An award of reasonable attorneys' fees and costs; and

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: December 4, 2024            Respectfully submitted,

By: s/ Mark L. Javitch
    Bar Number: CA 323729
    Attorney for Plaintiff
    Javitch Law Office
    3 East 3rd Ave. Ste. 200

San Mateo, California 94401
Telephone: (650) 781-8000
Fax: (650) 648-0705
Email: mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*